IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE W. RANSTEAD,              )
                                   )
          Plaintiff,               )   Case No. CV05-1260-HU
                                   )
     vs.                           )      FINDINGS AND
                                   )      RECOMMENDATION
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
          Defendant.               )
_____ )

Alan Stuart Graf
P.O. Box 98
Summertown, Tennessee 38483
     Attorney for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

1   - FINDINGS AND RECOMMENDATION

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
        Attorneys for defendant

HUBEL, Magistrate Judge:

    Lawrence Ranstead brought this action pursuant to Section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits. The Commissioner moves to remand the case for further administrative proceedings; Mr. Ranstead agrees that the case should be remanded, but asserts that remand should be for the payment of benefits.

## Procedural Background

    Mr. Ranstead filed protectively for Title II benefits on August 7, 2002, alleging disability since July 25, 2002, based on osteoarthritis and degenerative disc disease. The applications were denied initially and on reconsideration. A hearing was held on August 3, 2004, before Administrative Law Judge (ALJ) Ralph W. Jones. On September 23, 2004, ALJ Jones issued a decision finding Mr. Ranstead not disabled. On June 16, 2005, the Appeals Council denied Mr. Ranstead's request for review, making the ALJ's decision the final decision of the Commissioner.

///

2    - FINDINGS AND RECOMMENDATION

### Factual Background

Born May 12, 1950, Mr. Johnson was 54 years old at the time of the ALJ's decision, and is now 56 years old. He has a Master's Degree in English. His past relevant work is as a carpenter.

### Medical Evidence

Mr. Ranstead suffered a back injury in May 2002. On August 14, 2002, an x-ray of the lumbosacral spine showed degenerative facet sclerosis of L4-S1 and degenerative disk disease at L5-S1. Tr. 169. On October 7, 2002, Philip Buckley, M.D., noted that Mr. Ranstead reported almost constant back pain, radiating down the legs, since the accident. Tr. 129. Mr. Ranstead said Vicodin and Naprosyn had not helped his symptoms. Id. On examination, Dr. Buckley found back pain with bilateral sciatica and mild weakness to knee extension on the left. Id. Mr. Ranstead began a program of physical therapy.

A Residual Physical Functional Capacity Assessment prepared on November 8, 2002, and cosigned on March 26, 2003, by Martin Kehrli, M.D. and Sharon Eder, M.D., contains findings that Mr. Ranstead can lift up to 20 pounds occasionally and up to 10 pounds frequently; stand, sit and/or walk with normal breaks for a total of about six hours in an eight-hour workday; climb stairs frequently; stoop frequently; kneel occasionally; and crouch and crawl occasionally. Tr. 179-184. No manipulative, visual, communicative, or environmental limitations were found. Id. The

3    - FINDINGS AND RECOMMENDATION

examiners noted Mr. Ranstead's statements that he was able to take occasional walks, clean house weekly, occasionally drive a car, prepare his own food, go grocery shopping weekly, and watch television four to five hours a day. Tr. 183. The examiners also quoted a third party report indicating that Mr. Ranstead visited other people, went grocery shopping, took care of many household duties, did the banking, cared for his son, went on outings such as dinners out, movies and concerts, and exercised by riding a stationary bike. Id. The examiners concluded, on the basis of these reports, that Mr. Ranstead was not precluded from all work activity. Id.

A physical therapy progress report dated January 9, 2003, noted that Mr. Ranstead reported continued improvement of the low back pain, but with periodic pain in the left leg and groin and interrupted sleep. Tr. 156. Walking had improved to 30 minutes and Mr. Ranstead was able to ride a bicycle for 20 minutes and stretch. Id. He was advised to continue treatment with electrical stimulation, massage, heat, trunk rotations, hip flexing, hamstring stretches, aerobic exercise on the stationary bicycle, swimming, and walking. Id. Mr. Ranstead was noted to tolerate basic back exercises, an independent aerobic exercise program, and activities of daily living. Tr. 157.

On January 18, 2003, Mr. Ranstead presented to the VA hospital emergency department. The discharge diagnosis was

musculoskeletal low back pain. Tr. 142. Mr. Ranstead was instructed to continue taking naprosyn, as well as Flexeril for 10 days and oxycodone for severe pain. Id.

On January 30, 2003, MRI findings showed significant disk desiccation and loss of disk height at L5-S1 and mild multilevel lumbar spondylosis at L3-4 and L4-5 without significant canal or foraminal stenosis. Tr. 151, 138.

Mr. Ranstead was seen on February 13, 2003 by Linda Lucas, M.D. Tr. 138-141. His chief complaint was low back pain. Dr. Lucas noted a negative focal neurologic examination on February 3 by Dr. Buckley. Tr. 138. Mr. Ranstead had failed to obtain relief after trials of doxepin, Feldene, naprosyn and oxycodone. Id.

Dr. Lucas's physical examination of the back showed some mild tenderness in the L5-S1 area and laterally over the top of the pelvis. Tr. 141. There was no tenderness over the trochanteric bursa. Straight leg raising was negative bilaterally. Id. There was some pain in the left hip with crossed leg, but symptoms were not reproduced. Neurological examination was normal. Id. Strength was normal throughout. Id. Mr. Ranstead could do heel/toe somewhat slowly. His gait was "fairly normal," although he winced with changing positions from lying to sitting or standing. Id.

The diagnosis was low back pain with some bilateral pain

into the groin, hip and buttocks area and medial pain down into the foot. Tr. 141. Dr. Lucas wrote, "Unclear why the patient has had persistent pain since May when in the past the problem resolved quite easily. Now it is to the point that he is unable to work." Id. Dr. Lucas prescribed Flexeril and trazodone for sleep. Id.

On February 18, 2003, an x-ray showed mild degenerative changes of the hips, which were not felt to be the cause of Mr. Ranstead's pain. Tr. 134.

A disability documentation from counselor Steven Gordon at the Office of Vocational Rehabilitation Services dated March 27, 2003 notes that limited range of movement "impacts types of work that [Mr. Ranstead] can perform. Unable to sit, stand, walk, lift, twist or turn without frequent rests. There is significant, persistent and constant pain." Tr. 185. Mr. Gordon notes that Mr. Ranstead's impairments caused pain and discomfort in "performing the essential functions of any manual labor activities, which comprise a majority of former job duties." Tr. 186.

A lumbosacral nerve conduction study done on April 4, 2003 was normal. Tr. 264.

A chart note dated April 14, 2003, states that physical examination shows normal range of motion in the neck and shoulders, and range of motion of the hips within functional range. Tr. 240. Gait was notable for intermittent decreased push-

off on the left. Id. Range of motion of the lumbar spine was full in flexion, about 50% of normal in extension, and decreased in lateral bending to the left. Palpation of the lumbar spine was negative on the midline, but with some tenderness over the left sacroiliac joint region. Id. Dr. Lucas's assessment was chronic sacroiliac pain on the left and probable sciatic irritation from hip rotator muscle tension, also on the left. Id. A sacroiliac belt was prescribed and Mr. Ranstead was told to return to the clinic for a trigger point injection in the tender area over the left sacroiliac region. Id. No medication changes were recommended, but he was advised to persist with physical therapy exercises. Id.

Chart notes of a psychology consult by Raymond Templin, Ph.D. dated April 17, 2003 indicate that Mr. Ranstead reported doing a physical therapy workout every other day for one to one and a half hours, but although the workout initially helped his pain, it no longer helped much. Tr. 241. Dr. Templin recorded that Mr. Ranstead presented a blunted affect in the interview and reported anxiety and depression over his financial situation. Tr. 242. He indicated that he had no income and that his wife lost her job in January 2003; they were currently living on his wife's unemployment and Social Security benefits. Id. Mr. Ranstead denied current or historical suicidal or homicidal ideation, psychiatric symptoms, other mental health treatment, and illicit

substance abuse. He received a score of 24 on the Beck Depression Inventory, indicating moderate depression. Id. Dr. Templin noted that Mr. Ranstead would shortly begin taking medication for the depression. Id.

A CT scan of the abdomen and pelvis done on May 7, 2003, was negative except for mild osteoarthritis of the hips and advanced facet arthropathy at L5-S1. Tr. 224.

On May 1, 2003, Mr. Ranstead was given a soft tissue steroid injection in the left hip area. Tr. 236. He reported a pain score before the injection of eight or ten on a ten-point scale; after the injection, he reported a pain score of four on a ten-point scale. Id. Mr. Ranstead reported that he tolerated walking and increased use of the exercise bicycle after the injection. Id.

Mr. Ranstead had bilateral facet joint injections on June 4, 2003, and reported pain relief. Tr. 231. On August 18, 2003, it was noted that a sacroiliac joint injection on June 2, 2003, had provided about one and a half months of pain control, but that low back pain had steadily increased since that time and was now rated at five or six on a ten-point scale.

An x-ray of the lumbosacral spine done August 2, 2003, showed degenerative facet sclerosis at L4 through S1 and degenerative disc disease at L5-S1. Tr. 138.

On September 17, 2003, Mr. Ranstead had bilateral

sacroiliac joint injections, which failed to provide any sustained pain control. Tr. 209. It was thought that his current pain was more likely related to facet arthritis and degenerative changes in the spine, and Mr. Ranstead had facet joint injections on October 29, 2003. Id.; tr. 208.

A progress note by Dr. Lucas dated February 26, 2004, gives a diagnosis of mechanical low back pain with negative focal neurological examination, and with failed trials of doxepin, Feldene, naprosyn, Vicodin and oxycodone. Tr. 195. A trial of physical therapy had "so far" provided Mr. Ranstead with "mild relief." Id. Dr. Lucas had referred Mr. Ranstead to Northwest Pain Clinic for assessment. Tr. 197-98. The report also noted depression and insomnia, for which Mr. Ranstead was being treated with citalopram and trazodone. Id.; tr. 196.

## Hearing Testimony

Mr. Ranstead testified that he experiences pain on a daily basis in his lower back, both legs and into the groin. Tr. 307. He feels that he is unable to work full time because he spends approximately a third to half of each day lying down to relieve pain. Tr. 310.

## Standards

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). This means an impairment must be medically determinable before it is considered disabling.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).    If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). That determination is governed by the "severity regulation," which provides:

If you do not have any impairment or combination of

10  - FINDINGS AND RECOMMENDATION

> impairments which significantly limits your physical
> or mental ability to do basic work activities, we
> will find that you do not have a severe impairment
> and are, therefore, not disabled. We will not
> consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c). If the claimant does not have a
severe impairment or combination of impairments, the disability
claim is denied. If the impairment is severe, the evaluation
proceeds to the third step. Yuckert, 482 U.S. at 141.

In step three, the Commissioner determines whether the
impairment meets or equals "one of a number of listed impairments
that the [Commissioner] acknowledges are so severe as to preclude
substantial gainful activity." Yuckert, 482 U.S. at 140-41. If a
claimant's impairment meets or equals one of the listed
impairments, he is considered disabled without consideration of
her age, education or work experience. 20 C.F.R. s 404.1520(d),
416.920(d).

If the impairment is considered severe, but does not meet
or equal a listed impairment, the Commissioner considers, at step
four, whether the claimant can still perform "past relevant
work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can
do so, he is not considered disabled. Yuckert, 482 U.S. at 141-
42. If the claimant shows an inability to perform his past work,
the burden shifts to the Commissioner to show, in step five, that
the claimant has the residual functional capacity to do other
available work in consideration of the claimant's age, education

11  - FINDINGS AND RECOMMENDATION

and past work experience. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). Whether to remand under sentence four is a matter of judicial discretion. Id. at 1177. A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. Holohan v. Massinari, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." Id. In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. Id.

In Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996), the court held that improperly rejected evidence should be credited and an immediate award of benefits be made when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

12 - FINDINGS AND RECOMMENDATION

If the <u>Smolen</u> test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ *might* have articulated a justification for rejecting the doctor's opinion. <u>Harman</u>, 211 F.3d at 1173 (emphasis in original). See also <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595(9th Cir. 2004)(characterizing Commissioner's request for remand as a "heads we win; tails, let's play again") and <u>Moisa v. Barnhart</u>, 367 F.3d 882, 887 (9th Cir. 2004)(the "Commissioner, having lost this appeal, should not have another opportunity ... any more than Moisa, had he lost, should have an opportunity for remand and further proceedings.")

### Discussion

The ALJ found that Mr. Ranstead had not engaged in substantial gainful activity since his alleged onset date, and that he had the medically determinable impairments of discogenic and degenerative back disease and osteoarthritis that caused "significant vocationally relevant limitations." Tr. 17.

The ALJ found Mr. Ranstead's testimony "generally not credible in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, and the reports of the treating and examining practitioners." Tr. 20.

The ALJ adopted the opinion of Dr. Kehrli on March 26, 2003, that Mr. Ranstead was able to lift and carry 20 pounds occasionally and 10 pounds frequently, and that he could sit,

stand and walk for about six hours in an eight hour day, limited to occasional stooping, crouching and crawling as well as the climbing of ladders, ropes or scaffolds. On the basis of this opinion, the ALJ found that Mr. Ranstead had the residual functional capacity to engage in light work.

The ALJ stated that he had "taken into consideration the totality of the medical record," tr. 21, and agreed that Mr. Ranstead had "symptom-producing medical problems," but that Mr. Ranstead "exaggerates the symptoms and functional limitations caused by his condition." Tr. 22. The ALJ added, "So, while the claimant has impairments that are reasonably expected to produce the type of pain he alleges, his complaints suggest a greater severity of symptoms than can be shown by the objective medical evidence alone." Id.

The Commissioner acknowledges that the ALJ failed to give adequate consideration to Mr. Ranstead's medical evidence, and asks that the court remand this case so that the ALJ can "reconsider all medical source opinions of record" and "update" Mr. Ranstead's medical records. The Commissioner also acknowledges that the ALJ failed to give legally sufficient reasons for rejecting Mr. Ranstead's testimony, and asks that the court remand this case so that the ALJ can "address Plaintiff's credibility with specificity."

I note that the ALJ also committed clear legal error with

his finding that the *severity* of Mr. Ranstead's pain was not supported by objective clinical findings. Once Mr. Ranstead established the existence of a medical condition that could reasonably be expected to produce pain, he was not required to prove the degree or severity of the pain by means of objective medical findings. See, e.g., <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347 (9th Cir. 1991)(en banc)(Claimant's testimony about pain may be disregarded if it is unsupported by medical evidence which supports the *existence* of such pain, although the claimant need not submit medical evidence which supports the *degree* of pain); <u>Vertigan v. Halter</u>, 260 F.3d 1044 (9th Cir. 2001)(fact that claimant's testimony not fully corroborated by objective medical findings, in and of itself, is not clear and convincing reason for rejecting it); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996)(Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering).

Having examined the ALJ's findings and other evidence in this case, I conclude that a remand for further administrative proceedings would serve no purpose because unchallenged findings by the ALJ establish that under Social Security regulations, Mr. Ranstead is deemed disabled.

The evidence establishes that Mr. Ranstead is now 56 years

15  - FINDINGS AND RECOMMENDATION

old. The ALJ found that he was unable to perform his past relevant work, and that he was limited to light work. Mr. Ranstead's educational level is well above a high school graduate. Vocational expert Richard Keough testified at Mr. Ranstead's hearing that Mr. Ranstead's previous work experience as a carpenter was semiskilled, and did not provide skills transferable to any other position at the light exertional level. Tr. 324-325.

The Social Security Administration's Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, provide that an individual of advanced age (55 years and older) who is limited to light work, educated through high school or higher, having past work experience that is semiskilled, but without skills transferable to other work, is deemed disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.06.

## Conclusion

I recommend that the Commissioner's motion for remand for further administrative proceedings (doc. # 25) be DENIED, and that this case be remanded to the Commissioner for the payment of benefits.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 6, 2007. If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due February 20, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 22ND day of January , 2007.

Dennis James Hubel
United States Magistrate Judge

17   -  FINDINGS AND RECOMMENDATION